**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:21-cv-00641-DDD-KMT

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

CHATFIELD PCS LTD.;
GO ECO MANUFACTURING, INC.; and
TRA JAY SCARLETT,

     Defendants.

---

**\*\*<u>FILED UNDER SEAL</u>\*\***

**ORDER GRANTING PLAINTIFF'S EX PARTE MOTION FOR
TEMPORARY RESTRAINING ORDER AND ASSET FREEZE**

---

Plaintiff U.S. Securities and Exchange Commission moves for a temporary restraining order (1) prohibiting Defendants Chatfield PCS Ltd., GO ECO Manufacturing, Inc., and Tra Jay Scarlett from violating the anti-fraud provisions of federal securities laws; (2) prohibiting Defendants from accepting or disbursing any additional investor funds; (3) freezing Defendants' assets; and (4) providing other ancillary relief. (Doc. 2.) The Commission has made a clear showing that it will likely be successful in proving that Defendants have violated federal securities laws and will likely do so again if they are not restrained. A temporary freeze of Defendants' assets appears necessary to ensure that those assets remain available to cover any disgorgement or civil penalties that may become due if the Commission prevails in this litigation. Accordingly, the Commission's motion is granted.

## BACKGROUND

The Commission's complaint and motion are lengthy and accompanied by numerous voluminous exhibits, which the court has reviewed in detail. But the pertinent facts, as alleged by the Commission and demonstrated by the declarations and exhibits in the record, are straightforward and summarized as follows.

Defendant Scarlett is the founder, president, and sole owner of Defendant Chatfield. He is the founder, president, CEO, and a substantial shareholder of Defendant GO ECO. From early 2016 to as recently as January 2021, Mr. Scarlett, through Chatfield, solicited investors to buy stock in GO ECO, which prospective investors were told is a drink bottling and manufacturing company in Colorado Springs, Colorado. Investors were instructed that they could purchase GO ECO preferred stock by sending a check to Chatfield or making a wire transfer to Chatfield's bank accounts. Defendants told investors that money sent to Chatfield in exchange for GO ECO stock would be delivered to GO ECO and used to fund and expand GO ECO's business. Defendants raised over $3.2 million from at least 26 investors.

In fact, GO ECO has never operated, bottled or manufactured anything, or even had a bank account. None of the investors' money has ever been transferred from Chatfield to GO ECO. Instead, Mr. Scarlett misappropriated at least $2 million in investor funds for his personal use, including making a down payment on a home, making mortgage payments on his home, making large cash withdrawals, purchasing precious metals and jewelry, funding personal travel and dining, and making payments to his family members. Mr. Scarlett also misappropriated approximately $560,000 in investor funds to pay Chatfield staff and other Chatfield expenses.

Mr. Scarlett, Chatfield, Chatfield's staff acting at Mr. Scarlett's direction, and/or GO ECO made the following false representations to prospective investors over the telephone, by email, and/or via distribution of private placement memoranda, executive summaries concerning GO ECO, subscription agreements, and investment instructions:

- GO ECO was an operating bottling and packaging company with an existing customer base.

- GO ECO made millions of dollars in annual revenues and profits.

- GO ECO was selling shares to raise capital that would be used to fund and expand its business.

- GO ECO had a management team with relevant experience in manufacturing and financing emerging companies.

- GO ECO had an exclusive contract with a key client, a protein drink company, to make or bottle the client's protein shots.

- Investor funds would be placed in an escrow account until a minimum offering amount was raised, at which point all proceeds from share sales would be delivered directly to GO ECO and be available for its use.

- No fees or commissions would be deducted from investor funds to make payments to Mr. Scarlett, Chatfield, or Chatfield staff.

In reality, GO ECO was never in operation; the individuals identified as GO ECO's COO and Managing Director never worked for GO ECO; GO ECO did not have an exclusive contract with and never performed any services for the protein drink company; no investor funds were ever placed in escrow; and Mr. Scarlett has misappropriated nearly all of the investor funds deposited in Chatfield's bank accounts.

The Commission alleges that Defendants violated the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934

("Exchange Act"), and that Defendants will continue to do so unless they are restrained.

## APPLICABLE LAW

Ordinarily, a party seeking a temporary restraining order must show: (1) that it is substantially likely to succeed on the merits; (2) that it will suffer irreparable injury if the court denies the requested relief; (3) that its threatened injury without the restraining order outweighs the opposing party's under it; and (4) that the requested relief is not adverse to the public interest. *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019); *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1091 (D. Colo. 2020) (standard for temporary restraining order is same as that for preliminary injunction (citing *Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002))). And the court may issue a temporary restraining order without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

But when "defendants are engaged in, or about to be engaged in, [acts] or practices prohibited by a statute which provides for injunctive relief to prevent such violations," the traditional equitable factors, including irreparable harm, need not be shown. *Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1035 (10th Cir. 1993); *see also*

*Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981) (collecting cases and noting that other courts have applied this rule to Securities Act and Exchange Act); *Commodity Futures Trading Comm'n v. Wall Street Underground, Inc.*, 128 F. App'x 726, 728 (10th Cir. 2005) (applying rule to Commodity Exchange Act). Such is the case here. The Commission seeks injunctive relief pursuant to the Securities Act and the Exchange Act, which provide that:

> Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of [securities laws], the Commission may . . . bring an action in any district court of the United States . . . to enjoin such acts or practices, and upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

15 U.S.C. § 77t(b) (Securities Act); *accord* 15 U.S.C. § 78u(d)(1), (5) (Exchange Act). The Commission therefore "need only show that the statutory conditions for the issuance of an injunction [are] met." *Mical*, 1 F.3d at 1036; *accord Sec. & Exch. Comm'n v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808-09 (2d Cir. 1975). The "proper showing" required by the Securities Act and the Exchange Act "include[s], at a minimum, proof that a person is engaged in or is about to engage in a substantive violation of either one of the Acts or of the regulations promulgated thereunder." *Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680, 700-01 (1980).

While the traditional four-factor test for a temporary restraining order does not apply here, that does not mean the court should not take equitable considerations into account when deciding whether to grant injunctive relief. *See Sec. & Exch. Comm'n v. Unifund SAL*, 910 F.2d 1028, 1035-40 (2d Cir. 1990). "[T]he Commission should be obliged to make a more persuasive showing of its entitlement to [injunctive relief] the more onerous are the burdens of the injunction it seeks." *Id.*

at 1039. Where, as here, the Commission seeks injunctive relief that mandates action or alters the status quo, it must make a "clear showing" as to (1) its likelihood of proving the alleged statutory violation, and (2) the likelihood that a violation will occur again in the future. *Id.* at 1039-40; *cf. Mrs. Fields*, 941 F.3d at 1232 (to obtain preliminary relief that mandates action or changes status quo, movant must make "strong showing" of likelihood of success on merits).

## DISCUSSION

## I.   Likelihood of Proving Defendants Violated Securities Laws

The Commission alleges the following statutory violations: (1) all Defendants have violated Section 10(b) of the Exchange Act[1] and Rule 10b-5 thereunder;[2] (2) Mr. Scarlett and Chatfield have violated

---

[1]   Section 10(b) provides that:

> It shall be unlawful for any person . . . by the use of any means or instrumentality of interstate commerce or of the mails . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

[2]   Rule 10b-5 provides that:

> It shall be unlawful for any person . . . by the use of any means or instrumentality of interstate commerce, or of the mails . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business

Section 17(a)(2) of the Securities Act;[3] and (3) all Defendants have violated Sections 17(a)(1) and (3) of the Securities Act.[4] (Doc. 1 ¶¶ 86-94.)

To establish a violation under Section 10(b) or Rule 10b-5 of the Exchange Act,[5] the Commission must prove that Defendants (1) made a misrepresentation or omission of material fact, or committed a deceptive or manipulative act in furtherance of a scheme to defraud, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) by means of interstate commerce or the mail. *Smart*, 678 F.3d at 856; *Sec. & Exch. Comm'n v. Wolfson*, 539 F.3d 1249, 1255-66 (10th Cir. 2008);

which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

[3]   Section 17(a)(2) provides that:

It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails . . . to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

15 U.S.C. § 77q(a)(2).

[4]   Sections 17(a)(1) and (3) provide that:

It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails . . . (1) to employ any device, scheme, or artifice to defraud . . . or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a)(1), (3).

[5]   The coverage of Rule 10b-5 is coextensive with that of Section 10(b). *Sec. & Exch. Comm'n v. Smart*, 678 F.3d 850, 856 n.7 (10th Cir. 2012).

*Sec. & Exch. Comm'n v. McDuffie*, No. 12-cv-02939, 2014 WL 4548723, at *8, *10 (D. Colo. Sept. 15, 2014). Sections 17(a)(1) to (3) of the Securities Act require substantially similar proof with respect to the offer or sale of securities.[6] *Smart*, 678 F.3d at 857. The primary difference between Section 10(b) and Sections 17(a)(1) to (3) is in the scienter element. *Id.* Section 10(b) and Section 17(a)(1) require the Commission to establish at least recklessness, whereas negligence is sufficient for Sections 17(a)(2) and (3). *Id.*

The court has examined the allegations in the Commission's complaint (Doc. 1) and motion (Doc. 2), along with the declarations (Doc. 1-3; Doc. 1-11; Doc. 1-13; Doc. 1-17; Doc. 1-25; Doc. 1-27) and associated exhibits in the record. The evidence clearly shows that the Commission is likely to prove the alleged statutory violations.

The Commission is likely to successfully prove that Defendants each made misrepresentations or omissions of material fact and committed deceptive acts in furtherance of a scheme to defraud investors. The evidence shows that Defendants told investors that their investment funds would be place in escrow and then transferred to GO ECO—an operating and profitable company with an existing client base and experienced management—for GO ECO's use in expanding its business. All of this was false, and material. The investor declarations in the record uniformly state that the investors would not have invested in GO ECO stock if they had known that it was not an operating and profitable business; it did not have an existing client base or an exclusive contract with

---

[6]   Although Section 10(b) requires that the fraud be committed "in connection with the purchase or sale of any security," while Section 17(a) requires that the fraud be committed "in the offer or sale of any securities," these phrases are often used interchangeably. *Wolfson*, 539 F.3d at 1263.

a protein drink company; it did not have an experienced management team; and Mr. Scarlett would use their money for personal use and to fund Chatfield. (Doc. 1-13 ¶¶ 15-17, 19; Doc. 1-25 ¶¶ 9-12; Doc. 1-27 ¶¶ 21-24); *see City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1265 (10th Cir. 2001) (statement or omission is material if reasonable investor would consider it important in determining whether to buy stock and it would have "significantly altered the total mix of information available" to current and potential investors).

As to scienter, the evidence shows that Mr. Scarlett's actions here likely "go beyond mere recklessness and indicate a deliberate intent to defraud investors." *Smart*, 678 F.3d at 857. The court therefore need not consider whether the Commission might also prove that Mr. Scarlett was reckless or negligent. And because Mr. Scarlett is the president of Chatfield and the president and CEO of GO ECO, his scienter can be attributed to Chatfield and GO ECO. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106 (10th Cir. 2003).

The Commission is also likely to successfully prove that Defendants' misrepresentations were made in connection with the purchase or sale of GO ECO stock. *See Smart*, 678 F.3d at 857 (misrepresentation made to induce someone to purchase security is made "in connection with the purchase or sale of a security").

Finally, the Commission also will likely be successful in showing that Defendants' misrepresentations and deceptive acts were made by means of and using instrumentalities of interstate commerce. *See Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 441 n.24 (E.D.N.Y. 2016) (internet, email, and wire transfers are instrumentalities of interstate commerce); *Sec. & Exch. Comm'n v. Solucorp Indus.*,

*Ltd.*, 274 F. Supp. 2d 379, 419 (S.D.N.Y. 2003) (internet and telephone are instrumentalities of interstate commerce).

## II. Likelihood that Defendants Will Continue to Violate Securities Laws if Not Restrained

The evidence clearly shows that Defendants will likely continue their statutory violations in the future if they are not restrained.

Determination of the likelihood of future violations "requires analysis of several factors, such as the seriousness of the violation, the degree of scienter, whether [the] defendant's occupation will present opportunities for future violations[,] and whether [the] defendant has recognized his wrongful conduct and gives sincere assurances against future violations." *Sec. & Exch. Comm'n v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993). The degree of scienter "bears heavily" on the analysis, and a knowing violation of the securities laws will justify an injunction more readily than a reckless or negligent one. *Id.*

The evidence indicates that Mr. Scarlett knowingly and intentionally perpetrated a scheme to defraud over a period of five years. The alleged violations here are serious, resulting in millions of dollars of misappropriated investor funds. Mr. Scarlett has not recognized his wrongful conduct—his employees continued to solicit investor funds as recently as January 2021, after the Commission had issued document subpoenas to each of the defendants. (*See* Doc. 1-27¶¶ 16-19; Doc. 1-3 ¶¶ 40-43.) Given these facts, the court finds there is a substantial likelihood that Defendants will violate securities laws in the future. The court will therefore grant the Commission's request for a temporary restraining order.

### III. Forms of Temporary Relief Sought

The Commission requests a temporary restraining order that (1) prohibits Defendants from violating the anti-fraud provisions of the Securities Act and the Exchange Act; (2) prohibits Defendants from accepting or disbursing any additional investor funds; (3) freezes Mr. Scarlett's and Chatfield's assets to ensure that any disgorgement or civil penalties that may become due can be collected; (4) compels Defendants to provide an accounting of the identities of their investors, their disposition of investor funds, and the current location of all investor funds and assets purchased with investor funds; (5) compels Defendants to provide expedited discovery and authorizes alternative service; (6) requires Defendants to preserve relevant evidence; and (7) requires Defendants to show cause why the temporary restraining order should not be converted to a preliminary injunction that will remain in effect during the pendency of the litigation. The court finds that each of these requests is warranted.

The Commission's clear showing that it will likely prove the alleged statutory violations and that Defendants are likely to continue such violations warrants a prohibition against future violations. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)(1); *Unifund*, 910 F.3d at 1040. And a prohibition against accepting, depositing, or disbursing any additional funds from investors will preserve the status quo and protect existing investors and potential new investors from being subject to additional fraudulent activities while the litigation is pending. Similarly, an asset freeze is appropriate to facilitate enforcement of any remedy that might be ordered in the event a violation is established on summary judgment or at trial. *Unifund*, 910 F.3d at 1041; *Sec. & Exch. Comm'n v. End of Rainbow Partners, LLC*, No. 17-cv-02670-MSK-NYW, 2017 WL 5404199, at *2 (D. Colo. Nov. 14, 2017) (purpose of asset freeze is to advance public

interest in ensuring ill-gotten funds can be secured to satisfy potential future judgment).

An accounting will assist the Commission in identifying the location of any additional assets that may be subject to the asset freeze. *See Sec. & Exch. Comm'n v. Int'l Swiss Invs. Corp.*, 895 F.2d 1272, 1276 (9th Cir. 1990) (court had power to grant preliminary injunction ordering "an accounting the purpose of which is to identify assets subject to disgorgement"). A preservation order will prevent Defendants from altering or destroying documents and evidence relevant to this action. *See Unifund*, 910 F.2d at 1040 n.11 (where asset freeze was warranted, evidence preservation order was "innocuous" addition to preliminary injunction that "should not be disturbed"). And expedited discovery and authorization of alternative service will enable the parties to promptly prepare for a preliminary injunction hearing, which the court must expedite and "set for the earliest possible time." Fed. R. Civ. P. 65(b)(3).

## IV. Issuing Temporary Restraining Order Without Notice

The Commission's attorney has certified in writing that providing Defendants advance notice of its motion for temporary restraining order would allow Defendants to dissipate or conceal assets before an asset freeze is effectuated, to the detriment of harmed investors. (Doc. 1-2 ¶ 3.) The Commission's attorney states that "[g]iven the egregious and ongoing nature of the Defendants' fraud, the SEC believes there is a high likelihood of dissipation or concealment should the Defendants be given notice." (*Id.*) The court agrees. And Defendants' dissipation or concealment of assets could cause immediate and irreparable loss to investors should Defendants thereby evade payment of any disgorgement that may become due. Accordingly, this Order is issued without notice to Defendants pursuant to Federal Rule of Civil Procedure 65(b)(1).

## CONCLUSION

### I.   It is ORDERED that:

Plaintiff United States Securities and Exchange Commission's Ex Parte Emergency Motion for a Rule 65(b)(1) Temporary Restraining Order, an Asset Freeze, and Other Emergency Relief (Doc. 2) is GRANTED.

Pursuant to Federal Rule of Civil Procedure 65(b), 15 U.S.C. § 77t(b), and 15 U.S.C. § 78u(d)(1),

A.  Defendants Chatfield PCS Ltd. and Tra Jay Scarlett and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are TEMPORARILY RESTRAINED from, directly or indirectly, in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), in the offer or sale of any security by the use of any means or instruments of transportation, or communication in interstate commerce or by the use of the mails:

(1)  employing any device, scheme, or artifice to defraud; or

(2) obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3) engaging in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the purchaser.

B. Defendant GO ECO Manufacturing, Inc. and its officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are TEMPORARILY RESTRAINED from, directly or indirectly, in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), in the offer or sale of any security by the use of any means or instruments of transportation, or communication in interstate commerce or by the use of the mails:

(1) employing any device, scheme, or artifice to defraud; or

(2) engaging in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the purchaser.

C. All Defendants and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are TEMPORARILY RESTRAINED from, directly or indirectly, in violation of Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, in connection with the purchase or sale of any security by the use of any means or instruments of transportation, or communication in interstate commerce or by the use of the mails:

(1) employing any device, scheme, or artifice to defraud; or

(2) making any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3) engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

D.  Defendants and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are TEMPORARILY RESTRAINED from, directly or indirectly, accepting, depositing, or disbursing investor funds, and must refrain from accepting, taking control of, depositing in any financial institution, or disbursing from any financial institution, funds from investors.

E.  Pending further action by this court,

(1) $6,415,200 of assets, funds, or other property of Defendants, wherever located or by whomever held, and whether acquired before or after institution of this action, are frozen (with allowance for necessary and reasonable living expenses to be granted by this court only upon good cause shown by application to the court with notice to and an opportunity for Plaintiff to be heard).

(2) Defendants and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise must hold and retain within their control, and otherwise prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever (including the use of any credit cards or other incurring of debt) of any of their funds, property (including money, virtual currency or other digital asset, real or personal property, tangible assets, securities, commodities,

choses in action, or other property of any kind whatsoever, in whatever form such assets may exist and wherever located), or other assets or things of value held by them, under their control, or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located, up to $6,415,200.

(3) Any bank, financial institution, brokerage institution, or other person or entity holding any funds, securities, or other assets in the name of, for the benefit of, or under the control of Defendants and their officers, directors, successor corporations, subsidiaries, affiliates, agents, servants, employees, attorneys, and those persons in active concert or participation with Defendants, must hold and retain within their control and prohibit the withdrawal, removal, transfer, or other disposal of any such funds or other assets.

This Order specifically applies, but is not limited, to the following accounts:

| Financial Institution | Account Name | Account Number(s) |
|---|---|---|
| J.P. Morgan Chase Bank, N.A. | Chatfield PCS Ltd. | xxxxx7091 |
| ZB, N.A. d/b/a Vectra Bank Colorado | Chatfield PCS Ltd. | xxxxxx1326 |
| Wells Fargo Bank, N.A. | Chatfield PCS Ltd. | xxxxxx0182 |
| Bank of America, N.A. | Tra Jay Scarlett | xxxxxxxx1290 |
| J.P. Morgan Chase Bank, N.A. | Tra Jay Scarlett | xxxxxx7309 xxxxx9789 |
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | Tra Jay Scarlett | xxxx9J89 xxxxxxxx1229 |
| ZB, N.A. d/b/a Vectra Bank Colorado | Tra Jay Scarlett | xxxxxx4214 xxxxxx5351 |

| Financial Institution | Account Name | Account Number(s) |
|---|---|---|
| Wells Fargo Bank, N.A. | Tra Jay Scarlett | xxxxxx7061<br>xxxxxx8436<br>xxxxxx4602<br>xxxxxx0855<br>xxxxxx9243 |

(4) No person or entity, including the Defendants or any creditor or claimant against them or any person acting on behalf of such creditor or claimant, may take any action to interfere with the asset freeze, including but not limited to the filing of any lawsuits (whether to recover assets or seek relief from Defendants or to seek relief on behalf of Defendants), liens, encumbrances, or bankruptcy cases to impact the property and assets subject to this Order. Any party or non-party may seek leave from this Order upon a proper showing.

(5) Copies of this Order may be served by any means, including facsimile transmission, email, and overnight courier, upon any entity or person that may have possession, custody, or control of any assets of Defendants that may be subject to any provision of this Order.

(6) Plaintiff may file notices of *lis pendens*, or any similar document that has the effect of clouding title, on all pieces of real property in which Defendants have an interest. Should the Defendants wish to sell any piece of real property in which they have an interest, they must give counsel for Plaintiff notice of the proposed sale and seek and obtain an order of the court permitting the sale prior to the sale. Defendants must fully account for any proceeds received from the sale of such property to the court and counsel for Plaintiff, and the proceeds of any such sales must be frozen pursuant to the provisions of

this Order. Defendants are prohibited from further encumbering their interests in any real or personal property by means of pledging it for collateral for any purpose or by allowing it to secure any obligation. This Order applies, but is not limited, to the following property: 3625 Hill Circle, Colorado Springs, Colorado 80904.

F. Defendants must, within five business days of service of this Order, file with the court and serve on Plaintiff at the address of its counsel of record, a sworn accounting of:

(1) The current locations of all funds or other assets received from any third party for the purpose of investment ("Investor"), specifying the Investor from whom the funds or other assets were received or obtained; the date(s) such funds or other assets were received; the current locations of all such funds or other assets; the disposition of any such funds or other assets including the date, amount, recipient and purpose of each disbursement; and the location, title, and account numbers at any financial institution to which any such funds or other assets have been transferred;

(2) All funds, digital assets, investments, securities, real estate, and other assets with an original cost or present value of over $1,000, including but not limited to jewelry, vehicles, and computers held in the name or for the benefit of Defendants or in the names of any family member, entity, subsidiary, affiliate, or agent under their direct or indirect control, or in which they have or have had, since February 1, 2016, a direct or indirect beneficial interest, stating a description and location of such assets;

(3) Each account, including safe deposit boxes, with any bank, financial institution, or brokerage firm maintained in the names of Defendants or the names of any family member, entity, affiliate, or agent, or in which they have direct or indirect control or beneficial interest, or have or have had any direct or indirect beneficial interest since February 1, 2016; and

(4) Every transaction in which the ownership, direction, and control of any funds, real estate, or other assets over $1,000, or other assets of any kind with an original cost or present value of over $1000 have been transferred, directly or indirectly, since February 1, 2016 to or from Defendants or their agents.

G. Defendants and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are TEMPORARILY RESTRAINED from destroying, mutilating, concealing, altering, disposing of, or otherwise interfering with Plaintiff's access to any and all books, records, documents, data, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files, and other property of or pertaining to any of the Defendants, wherever located and in whatever form, electronic or otherwise.

H. Commencing at the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Federal Rules of Civil Procedure 26, 30, 33, 34, 36, and 45, discovery will proceed as follows:

(1) All discovery requests may be served by email on counsel for any party, or if a party is unrepresented, discovery requests

may be served by facsimile, email, overnight mail, courier, or process server;

(2) Pursuant to Federal Rule of Civil Procedure 30(a), the parties may take depositions by oral examination on three business days' notice of any such deposition. Depositions may be taken telephonically or by video conferencing system. As to Defendants and their officers, directors, successor corporations, subsidiaries, affiliates, agents, servants, employees, attorneys, owners, brokers, associates, trustees, and underwriters, Plaintiff may depose such witnesses after serving a deposition notice upon such Defendant and without serving a subpoena on such witness. Deposition transcripts that have not been signed by the witness may be used for purposes of the hearing on Plaintiff's motion for a preliminary injunction. Any witness that fails to appear for his or her duly noticed deposition is prohibited from testifying or providing a declaration at the preliminary-injunction hearing;

(3) Pursuant to Federal Rule of Civil Procedure 33(a), the parties must answer interrogatories within four business days of service of such interrogatories;

(4) Pursuant to Federal Rule of Civil Procedure 34(b), the parties must produce all documents, electronically stored information, or designated tangible things requested within three business days of service of such request. Documents produced to Plaintiff must be delivered by email to the email addresses of counsel of record or as Plaintiff may direct in writing;

(5) Pursuant to Federal Rule of Civil Procedure 36(a), the parties must respond to requests for admissions within four business days of such requests;

(6) All written responses to Plaintiff's requests for discovery under the Federal Rules of Civil Procedure must be delivered by email to the email addresses of counsel of record or as Plaintiff may direct in writing; and

(7) In connection with any discovery from any non-party, deposition or document discovery may be had within four business days of service of a subpoena pursuant to Federal Rule of Civil Procedure 45. Service of a subpoena may be made by facsimile, email, mail, overnight mail, courier, or process server.

Pursuant to Federal Rule of Civil Procedure 65(b)(2), this Order will expire fourteen days after entry, unless the court extends it for good cause before that time or the court grants a motion by Defendants to dissolve or modify it pursuant to Federal Rule of Civil Procedure 65(b)(4).

Pursuant to Federal Rule of Civil Procedure 65(c), 15 U.S.C. § 77t(b), and 15 U.S.C. § 78u(d)(1), Plaintiff is not required to give security.

## II.  It is FURTHER ORDERED that:

As soon as possible but no later than one business day after the asset freeze is effectuated, Plaintiff must serve each Defendant with (1) a summons; (2) the Complaint (Doc. 1) and all attachments thereto; (3) Plaintiff's emergency motions (Doc. 2; Doc. 3) and all attachments thereto; and (4) this Order. Service may be made by facsimile, mail, email, delivery by courier or process server, or in any other manner authorized by Federal Rule Civil Procedure 5, and may be made on any registered agent, officer, or director of Defendants, or on counsel that has agreed to accept service. Plaintiff must promptly file proof of service in accordance with Federal Rule of Civil Procedure 4(l)(1).

A Preliminary Injunction Hearing is SET for March 24, 2021 at 1:00 p.m., at which Defendants must SHOW CAUSE why the court should not enter a preliminary injunction extending the asset freeze and other injunctive relief set forth in this Order until final adjudication of this case on the merits.

In light of the conditions created by the ongoing COVID-19 pandemic, and pursuant to General Order Nos. 2020-10 and 2021-3, the hearing will be conducted by video teleconference ("VTC"). No parties, attorneys, witnesses, or members of the public may attend the hearing in person. Members of the public may attend the hearing by teleconference at (866) 390-1828, using Access Code 9792296#. All persons participating in court proceedings remotely by VTC or teleconference are prohibited, under penalty of contempt, from recording or broadcasting the proceeding in any manner.

Counsel are directed to contact the Courtroom Deputy via email (patricia_glover@cod.uscourts.gov) no later than three business days before the hearing for instructions on how to proceed by VTC.

Defendants may file a written response to Plaintiff's motion for preliminary injunction no later than 1:00 p.m. on March 23, 2021.

Pursuant to Federal Rule of Civil Procedure 43(c), all direct witness testimony must be submitted by affidavit in advance of the hearing, and live testimony at the hearing will be limited to cross-examination and redirect examination. Both sides' witness affidavits, to the extent not already in the record, must be filed electronically no later than 5:00 p.m. on March 23, 2021.

The parties must exchange with each other and file with the court exhibit and witness lists no later than 5:00 p.m. on March 23, 2021.

Copies of all exhibits must be submitted by email to Domenico_Chambers@cod.uscourts.gov as attachments or via secure download link. Except for any video or audio exhibits, the exhibits must be in PDF file format. The file name for each exhibit must include the exhibit number and description (*e.g.*, "Exhibit 1 – Smith Affidavit"). Consult DDD Civ. P.S. II(C) regarding numbering of exhibits. The parties' witness lists must include an estimate of the time required for their cross-examination of each of the opposing party's witnesses. Exhibit and witness list forms can be found at http://www.cod.uscourts.gov/JudicialOfficers/ActiveArticleIIIJudges/HonDanielDDomenico.aspx.

The parties must notify each other of any exhibits they wish the opposing party's witnesses to have for purposes of cross-examination by 8:00 a.m. on March 24, 2021. Each party must ensure that its witnesses have copies of all exhibits that may be referenced during cross-examination and redirect examination. The parties must ensure that reliable video conferencing arrangements are made for themselves and any witnesses, and that any witnesses testify from a room where there will be no interruptions and that has a connection with sufficient bandwidth.

At the hearing, each side will be allotted time for an opening statement, cross-examination and redirect examination of witnesses, and closing argument. The parties are advised that the court may set time limits for each side. Counsel should be prepared to answer questions from the court during closing arguments.

Any motions affecting the hearing must be filed by 5:00 p.m. on March 23, 2021, with responses due by 8:00 a.m. on March 24, 2021. No replies will be permitted without leave of court.

**III. It is FURTHER ORDERED that:**

Plaintiff's Emergency Motion for an Ex Parte Order to File Under Seal the Complaint and All Papers Filed Therewith (Doc. 3) is GRANTED.

Pursuant to Local Civil Rule 7.2, the Clerk of Court is directed to temporarily maintain this proceeding and all documents filed therein under Level 2 restriction, accessible only to Plaintiff and the court. This restriction does not preclude Plaintiff from serving this Order on banks or other financial institutions in order to effectuate the ordered asset freeze. Plaintiff must notify the court no later than one business day after the asset freeze has been effectuated.

DATED: March 15, 2021
       at 1:10 p.m.

BY THE COURT:

_____

Hon. Daniel D. Domenico